165    305
107a ² 83

DANIEL L. BOONE *et al.*

*v.*

CHARLES W. COLEHOUR *et al.*

*Filed at Ottawa November 9, 1896—Rehearing denied March 6, 1897.*

1. LIMITATIONS—*general rule for applying bar in equity.* Where there is concurrent jurisdiction between courts of equity and courts of law, the former will, as a general rule, refer to the Statute of Limitations, as applied in courts of law, to determine the period when the bar will be complete in equity.

2. SAME—*when note is barred at law its security will be barred in equity.* If, after a note secured by mortgage is barred by the Statute of Limitations, resort is had to equity to foreclose the mortgage, that

court will apply the bar to foreclosure proceedings, in the absence of a justifiable excuse for the delay.

3. SAME—*new promise to pay note must be in writing.* A default suffered by a defendant in a foreclosure suit, afterwards dismissed, cannot be relied upon in a subsequent suit to foreclose as removing the bar of the Statute of Limitations from the mortgage note, on the ground that the default raised an implied promise to pay the same, as the new promise must be in writing.

4. LACHES—*effect of unjust attempt at collecting debt.* The fact that the holders of a note secured by trust deed filed a cross-bill, before their note was barred at law, in proceedings to foreclose a former trust deed, seeking unjustly to have their trust deed foreclosed as a first lien, which cross-bill was subsequently dismissed, is not such an effort to collect the note as renders it inequitable to apply the bar of *laches* to a foreclosure proceeding begun by them after their note was barred at law.

*Boone* v. *Colehour*, 50 Ill. App. 664, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. L. C. COLLINS, Judge, presiding.

This is an appeal from a judgment of the Appellate Court for the First District affirming a decree of the circuit court of Cook county dismissing an intervening petition of appellants, in the suit in equity of Charles W. Colehour against Edward Roby and William H. Colehour.

In the summer of 1871 a family by the name of Clarke, being the owners of certain lands in sections 8 and 17, in Hyde Park, in Cook county, sold the same to Charles W. Colehour, Francis M. Corby, Wesley Morrill and William Hansbrough for the round sum of $100,000. The last named bought an undivided half, and Colehour and the others the other undivided half. The title was taken in the name of William H. Colehour for the benefit of the actual owners. There was a down payment of $10,000. William H. Colehour executed notes and a trust deed to Voluntine C. Turner, as security for the deferred payments, to the extent of $86,000, and an assumed prior incumbrance of $4000. Shortly after the purchase Charles

W. Colehour bought out the interests of Corby and Morrill, and later, and on or about August 16, 1873, Hansbrough sold his half interest to Charles W. Colehour and Edward Roby. For part of the purchase price he received the note now in dispute, of William H. Colehour, for $15,066.47, bearing date August 16, 1873, and payable in two years, secured by trust deed upon the land in section 17. Afterwards Hansbrough assigned these securities to the late Levi D. Boone. As the years passed the Colehours and Roby defaulted in payment of the Clarke debt. The Clarkes filed a bill in the circuit court of Cook county to foreclose, making the Colehours, Roby, Hansbrough, Dr. Boone and many others parties defendant. Boone died intestate during the pendency of this suit, and thereupon his administrators and heirs-at-law were made parties to the proceeding. They answered the bill to foreclose the Turner trust deed, and also filed a cross-bill in that case for the purpose of making this Boone mortgage a first lien,—a lien ahead of the Clarke mortgage,—setting up certain facts they claimed would establish that, and containing the following prayer: That the amount due on said note of William H. Colehour to William Hansbrough, and secured by said trust deed to Levi D. Boone, may be ascertained and established by decree of this court, and that the lien of said trust deed to said Boone securing the same may be determined and decreed to be a valid and first lien on all of said north three-quarters of the east fractional half of section 17, superior to the lien and claim of said Clarke and others, and said Turner, upon said land. Neither the Colehours nor Roby answered the cross-bill, and Roby took a default against the Colehours, but not against himself.

At the final hearing of the Clarke suit a decree was granted foreclosing the mortgage but dismissing the Boone cross-bill. While this decree dismissed the cross-bill generally, it will become apparent, as the court considers the whole case, that the dismissal was really

intended to be against the Clarkes alone. The Cole-
hours, it will be seen, owed the mortgage debt and did
not deny it, but the cross-bill, while it prayed for a fore-
closure, was also aimed at the Clarkes, inasmuch as it
sought a priority over their incumbrance, and the Clarkes
were entitled to have it dismissed.

Upon appeal to the Appellate Court and to this court,
respectively, the decree of the circuit court was affirmed.
In the Appellate Court the affirmance was merely *pro
forma.* This court held that a cross-bill was not neces-
sary to preserve the rights of a second mortgage, but that
such rights could be protected under the answer.

At the foreclosure sale, complainants, through their
agent, Charles E. Speer, became the purchasers for the
full amount of the decree, and there was no surplus re-
maining. Afterwards, in the present suit between the
Colehours and Roby, the Title Guarantee and Trust Com-
pany was appointed receiver, and advanced sufficient to
redeem from the foreclosure sale. It is now, under the
decree of court, selling the redeemed real estate. After
realizing sufficient to reimburse its advances and services
and costs of court it is anticipated a large surplus will
remain for distribution.

Soon after the redemption, and on July 17, 1891, ap-
pellants filed their intervening petition, seeking to estab-
lish the lien of their trust deed upon the proceeds of the
sale of the land in section 17 when the same should be
sold by the receiver, subject, however, to its advances
for redemption, etc.

Samuel S. Boone, one of the parties to the original
petition, having died, it became necessary to file a sup-
plementary petition, which was done on July 7, 1892. To
this William H. Colehour filed a plea of the Statute of
Limitations. Charles W. Colehour filed a similar plea
with an answer in support, and the Title Guarantee and
Trust Company answered also, setting up the Statute of
Limitations. Roby did not appear and was defaulted.

The pleas of the Colehours were allowed, and at the final hearing the court made a number of findings of fact, and also found that appellants' claim was barred by the Statute of Limitations, and that the trust deed in controversy was no longer a lien upon the land in question, and it thereupon dismissed the petition for want of equity.

The real question in this case is, whether the note and trust deed set forth in the petition are barred by the Statute of Limitations. The note secured by the trust deed matured August 16, 1875,—over fifteen years before the petition in this case was filed. It is not pretended that the Colehours, or either of them, have, within ten years before the filing of the petition, made any promise to pay the note. It is not even alleged that either has ever, in person, since the maturity of this note, recognized the debt secured by it.

There is no dispute about the facts found by the decree, but appellants contend that under the facts so found they are entitled to the relief sought by their petition. The decree finds that William H. Colehour executed and delivered the note and trust deed in suit, bearing date August 16, 1873; that the indebtedness was for purchase money of the land mentioned in the trust deed; that no payment was ever made upon the debt; that appellants are owners of the note and trust deed; that the Clarke suit was begun to foreclose their prior mortgage; that appellants, or those under whom they claim, appeared in due season in the Clarke foreclosure suit and answered, setting forth and exhibiting their rights and interests under said note and trust deed; that on June 5, 1885, before the expiration of ten years from the maturity of their note, appellants filed a cross-bill to foreclose the trust deed as against the Colehours; that the Colehours were defaulted for want of an answer thereto; that the cross-bill was afterwards dismissed, and that the dismissal was affirmed by the Appellate Court and this court, respectively. The language of these courts,

in their respective opinions, is set out in the decree, and appellants insist that it is manifest from this language that neither of said courts affirms the decree of dismissal of the cross-bill upon the merits of the issues raised, so far as the Colehours and Roby are concerned. The decree also finds that the litigation in the Clarke and Colehour foreclosure involved large and conflicting interests, and that a period of more than eight years elapsed from the filing of the original bill until the final disposition of the case by the Supreme Court. The Appellate Court affirmed this decree.

MONTGOMERY & MONTGOMERY, for appellants:

Mere lapse of time, however great, will not bar a recovery if an excuse therefor be given which takes hold upon the conscience of the chancellor, and is such as renders it inequitable that the bar should be interposed. *Harris* v. *McIntyre*, 118 Ill. 275.

Where the obligation is clear, and its essential character has not been affected by the lapse of time, equity will enforce a claim of long standing as readily as one of recent origin, as between the immediate parties to the transaction. 13 Am. & Eng. Ency. of Law, 674, note 5; *United States* v. *Alexander*, 19 Fed. Rep. 609; *Reynolds* v. *Sumner*, 126 Ill. 58; *Greenman* v. *Greenman*, 107 id. 404; *Pratt* v. *Pratt*, 91 U. S. 704; *Bond* v. *Hopkins*, 1 Sch. & Lef. 430; 2 Story's Eq. Jur. sec. 1521, *et seq.*, and notes; *Dunwiddie* v. *Self*, 145 Ill. 290.

A decree that the bill be taken as confessed is entered where the defendant, by not appearing within the time prescribed, is understood to admit the case made by the bill. 1 Black on Judgments, sec. 19, p. 19.

The admission of the due and unpaid debt was unqualified, hence the law implied a promise to pay it. Where the acknowledgment of the party is that the demand is still due and subsisting against him, this will be sufficient to infer a promise to pay. *Mellick* v. *Sealhorst*, Breese, 221.

A party who voluntarily permits a default to be taken, thereby impliedly admits that the demand is just and that he has no defense. *Lucas* v. *Spencer*, 27 Ill. 14.

A parol promise reviving a debt has the same effect as payment, under the statute. *Kallenbach* v. *Dickinson*, 100 Ill. 427.

MONROE & MCSHANE, for appellees Charles W. and William H. Colehour:

Equity courts, in cases of concurrent jurisdiction, usually consider themselves bound by the Statute of Limitations, which governs courts of law in like cases,—and this rather in obedience to the Statute of Limitations than by analogy. *Wagner* v. *Baird*, 7 How. 234; *Godden* v. *Kummell*, 99 U. S. 201.

To take a case out of the bar of the statute an express or clearly implied promise to pay must be made to the creditor or some one authorized to act for him. *Wachter* v. *Albee*, 80 Ill. 47.

In order to take a case out of the Statute of Limitations there must be a promise to pay the debt. It is not sufficient that the debtor admitted the account to be correct. *Quayle* v. *Guild*, 91 Ill. 385.

Under the statute now in force the new promise to take the note and mortgage out of the statute must be in writing. Limitation act, sec. 16.

JAMES E. MONROE, for appellee the Title Guarantee and Trust Company:

As to all mortgages, or trust deeds in the nature of mortgages, made since July 1, 1872, suit to foreclose the same must be brought within ten years after the right of foreclosure accrues, or it will be barred. Rev. Stat. chap. 85, sec. 11.

The existence of the debt is essential to the life of the mortgage given to secure it, and if the debt be barred by the Statute of Limitations the mortgage is gone and the

right to foreclose it in equity is barred. The mortgage debt is the principal thing, and the mortgage is only an incident to it. *Harris* v. *Mills,* 28 Ill. 44; *Pollock* v. *Maison,* 41 id. 516; *Emory* v. *Keighan,* 94 id. 543; *McMillan* v. *McCormick,* 117 id. 80.

Courts of equity, in suits brought to foreclose mortgages, do not act from analogy to the Statute of Limitations, but in direct obedience to its provisions. This is so in all cases where there is concurrent jurisdiction in law and equity. *Harris* v. *Mills,* 28 Ill. 44; *Quayle* v. *Guild,* 91 id. 378; *Manning* v. *Warren,* 17 id. 268; *Hancock* v. *Harper,* 86 id. 450; *Bonney* v. *Stoughton,* 122 id. 541.

Mr. JUSTICE PHILLIPS delivered the opinion of the court:

On the 16th day of August, 1873, William H. Colehour executed his note for $15,066.47 to William Hansbrough, due two years from date, with interest at six per cent per annum, which note became a chose in action of appellants, and to secure the same Colehour made a trust deed on certain lands, in which it was recited the land was incumbered by another deed of trust to secure a large sum of money, which latter deed was to one Turner. On a bill to foreclose this latter deed appellants were parties defendant and filed their answer and a cross-bill, by which they sought to have the deed of trust securing their note made a prior lien to the Turner deed of trust. They also asked the amount due on that note should be found. After an extended litigation a decree was entered foreclosing the Turner deed of trust and dismissing the cross-bill of appellants, which was affirmed by this court. (*Boone* v. *Clark,* 129 Ill. 466.) A sale having been made under that decree, such proceedings were subsequently had under a certain bill filed by Charles W. Colehour against Edward Roby and William H. Colehour that the Title Guarantee and Trust Company was appointed a receiver and advanced the money to pay the amount found to be

owing under the Turner foreclosure, and certain of the
lands were platted and sold to pay the sum so advanced.
At the time of the sale the lands were bid off for the
amount of the decree but were redeemed by the receiver,
and after selling enough to pay the amount advanced for
redemption certain lands were still in possession of the
receiver.    After the dismissal of appellants' cross-bill
they made no attempt to foreclose or protect their inter-
ests until the 17th of July, 1891, when they filed this in-
tervening petition in the case of Colehour against Roby
and Colehour.   By this petition it is asked that the
amount due upon this note shall be ascertained and the
lien of the trust deed may be decreed, and the receiver,
after paying the money advanced, etc., be ordered to sell
other lots and pay the amount found due on their note.
When this intervening petition was filed the note held
by appellants had been due for fifteen years and eleven
months.    To this intervening petition William H. Cole-
hour and Charles W. Colehour interposed pleas of the
Statute of Limitations, which were held sufficient and a
decree dismissing this bill was entered.

The contention of appellants is, that the history of
this litigation, and the fact of their filing an answer and
cross-bill in the litigation which resulted in the proceed-
ings to foreclose the Turner mortgage, which cross-bill
was dismissed by the court on hearing on July 17, 1886,—
more than eleven years after the note became due,—show
there was an active effort to collect this note, and hence
that *laches* cannot be imputed to them; that in equity the
conscience of the chancellor determines whether the bar
shall be interposed, and to apply the bar in the present
case would be inequitable.   A further contention of ap-
pellants is, that to the cross-bill filed by them in the
Turner foreclosure proceedings William H. Colehour and
Charles W. Colehour were parties defendant and did not
plead or answer, and their default was entered thereto,
whereby an implied promise to pay this note resulted.

As to the first contention, it appears the object and purpose of the cross-bill filed by appellants in the Turner foreclosure were to have their mortgage made a prior mortgage, and that cross-bill was dismissed. Whilst the Statute of Limitations does not strictly apply in equity, yet courts of equity recognize the fact that such statutes are everywhere regarded as conducive and necessary to the peace and repose of society and are dictated by experience. In cases not within the statute the time within which a party will be barred from relief necessarily depends upon the facts and circumstances of each particular case, and cases exist where courts of equity apply the bar by reason of *laches* on the ground of public policy, where, even by analogy, the time fixed by the statute has not run. These cases must depend upon the peculiar facts of each case. The general rule, however, is, where there is concurrent jurisdiction between courts of equity and courts of law, the former will refer to the statute as a means of determining the period in which the bar will be complete in equity. As where a note is secured by mortgage the latter is incident to the debt, and, where a suit on the note would be barred at law by the Statute of Limitations, if resort is had to a court of equity to foreclose the mortgage that court will apply the bar of the statute to the proceeding to foreclose. In this case the bar of the statute is complete at law, and is equally so in this proceeding, by section 11 of chapter 83 of the Revised Statutes. (*Pollock* v. *Maison*, 41 Ill. 516; *Emory* v. *Keighan*, 88 id. 482.) There was not a mere effort at foreclosure of this mortgage in the cross-bill in the Turner case,—it was an attempt at securing a priority which was unjust and inequitable. Failing in that effort does not make a strong appeal to the conscience of the chancellor to avoid the bar of the statute as inequitable. Had the cross-bill been alone for a foreclosure of their trust deed, or had they, in their answer, sought a foreclosure, it is doubtless true that a decree would have been ordered.

Much stress is laid upon the language in the opinion in *Boone* v. *Clark, supra,* where it is said (p. 493): "If appellants desire they may, under their answer, move the court, and it will be the duty of the chancellor—and which may yet be done in this cause—to preserve their rights, as against Colehour, in any surplus remaining from the sale of the property after the payment of the amount due appellees." The court was speaking of the case then before the court, and not of a new and different proceeding. This intervening petition is filed in a different case from what the answer in the other case of which the court was speaking was filed. Appellants did not follow the method suggested then, but adopted a new procedure in another case. Appellants' first contention cannot be sustained.

To take a case out of the bar of the statute an express or clearly implied promise to pay must be made by the debtor to the creditor, or some one authorized to act for him. In *Carroll* v. *Forsyth,* 69 Ill. 127, the court says (p. 131): "The law as recognized by this court is, that to remove the bar of the Statute of Limitations it is incumbent on the plaintiff to prove an express promise to pay the money, or a conditional promise with a performance of the condition, or an unqualified admission that the debt is due and unpaid, nothing being said or done at the time rebutting the presumption of a promise to pay. It must be of such a character as to clearly show a recognition of the debt and an intention to pay it,"—citing, as sustaining this case, *Parsons* v. *Northern Illinois Coal and Iron Co.* 38 Ill. 430, *Ayers* v. *Richards,* 12 id. 146, and *Norton* v. *Colby,* 52 id. 198. This language shows that the debt must not only be clearly recognized, but an intention to pay it must also be shown. This has always been the construction given to the Statute of Limitations in this State.

By the provisions of section 16 of the Limitation act of 1872, in force at the time of the execution of this note and since, the new promise necessary to remove the bar

of the statute as to written instruments must be in writing. Whilst a default entered against a defendant is as to that pleading a confession of its truth, it would not constitute a new promise in writing, as required by the statute. On no principle is a mere default a new promise in writing, and there is no pretense that any payment was made. The second contention of the appellants can not be sustained.

It was not error to dismiss the intervening petition, and the judgment of the Appellate Court affirming that decree is affirmed.        *Judgment affirmed.*